Mr. Katz, is it? Yes, Mr. Katz. Good afternoon, Your Honors. My name is Barry Katz. I represent the plaintiff, Appellant General Refractories. I would like to reserve three minutes of my time. I have granted the amicus two minutes of my time, so I would speak for ten minutes initially. That's fine. General Refractories is a Pennsylvania company that has defended tens of thousands of asbestos cases. It brought a standard declaratory judgment and breached a contract action against 16 insurance companies that sold policies to General Refractories from 1979 to 1986. The issue with each of the defendants was the validity of an asbestos exclusion that was contained in each of their policies. There are some common factual issues and some that are not common at all. The main common factual issue relates to a position advanced by the Department of Insurance of Pennsylvania that prior to 1987, if a policy contained an asbestos exclusion endorsement, it was not valid if not approved by the department or endorsed by the insured. Is that the essence of the merits of your case, that the provision is illegal because it wasn't approved by the state? That's the issue that you would have wanted the district court to address, I gather. That is one of the issues. What prejudice is it to you if we were to affirm the district court here? You'd still be able to go back to the state court and have that issue addressed? The ability to go into state court is suspect because of the Vail case. The Vail case is a Pennsylvania Supreme Court case that holds that in any case involving a claim for insurance under a policy, you have to add, as an interested party to that case, all the plaintiffs who have an interest in the outcome of that insurance coverage. In this case, that would be tens of thousands of individual plaintiffs that have an interest in the outcome of this. Why are there tens of thousands? Because that's how many individuals have sued General Refractories in the tort system, claiming that they have been injured as a result of exposure to asbestos. Is it a class of plaintiffs or are they individual suits? Individual suits in at least 30 jurisdictions throughout the country. All of those plaintiffs under the Vail decision would arguably have to be added to the lawsuit. Is that true in any suit by an insured under an insurance policy? Suppose you had just a simple situation where there was one plaintiff suing the insured and then the insured, there was a disclaimer and then the insured sued the insurance company. Does the plaintiff in the underlying suit have to be joined? Yes, that's what Vail holds. Suppose the plaintiff refuses to be joined for some reason. Suppose the plaintiff says I don't want to join that suit. The holding of Vail is that that plaintiff has to be added to the suit in order to protect its rights. Yes, he would just have to join as a party so that since the ultimate beneficiary of whether or not there is insurance is arguably the plaintiff, the Supreme Court of Pennsylvania in Vail held that that plaintiff has to be added to the lawsuit. Obviously they didn't contemplate it in the context of a mass tort action, but we won't know until we ended up through the state system as to whether or not that would be the law in the mass tort system. Certainly since each of these plaintiffs have an interest in the outcome of whether or not there is coverage, arguably they need to be added to that case. In addition to that, Johnnie Patrick has a right to be in federal court because of diversity and so that's why his case was brought here. That's an interesting rule because you could take any plaintiff suing any defendant and that plaintiff could have a creditor who says, boy, I hope he wins because then I can get my dough. If you think about it going downstream, that would apply a lot. I agree with you. I think the concept is this concern of some collusion between the nominal plaintiff, especially if it doesn't have any other assets, and the insurance company. Why did the judge say that the other insurance companies didn't go off on the fact that there weren't enough plaintiffs? He went off on the fact that there weren't enough defendants. Why weren't there enough defendants? In this case, the judge held that all the absent insurers in the coverage block were indispensable. He did so without finding any facts to support that, but for the fact that one policy indirectly followed form to another policy of a defendant, which indirectly followed form to an absent defendant. Because that one defendant was absent, he found, since there was language in that policy incorporated into the other policy, indirectly he found that that one was indispensable. Other than that one factual finding, there were no factual findings by the district court. But your unit discovery, and the chart was prepared to show which insurance policies were so intermingled that you had to bring these defendants or absent defendants would have been prejudiced by the decision in this case. So you knew that there were other defendants out there or absent defendants that should have been brought in. Your Honor, the absent defendants include defendants that are insolvent. The absent defendants include defendants that are exhausted. The absent defendants include defendants that have been released due to prior litigation when all these insurance companies were not parties. And the absent defendants, and that's the overwhelming majority, that it's insolvent, released, exhausted. Were there defendants that did fall into those categories? Absolutely, Your Honor. I could point that out to you. Admission is one. Sentry indemnity is another. There are many that fall into those categories. And that did not fall into those categories? Yes, there are a few that were non-inverse, and they were left out as well. But by far, the majority of the defendants that were left out fall into those categories. There was no distinction made by the district court with respect to the ability to sue insolvent, exhausted, or otherwise subject to release defendants. Your theory is that if A sues B, and that's as far as it gets, A and B, and B has a contract with C, and the terms of that contract become implicated in the suit between A and B, that no matter what the judge or the court says in the suit between A and B, that's not going to bind C in later litigation against A. First of all, Your Honor, that is the law. In fact, in this circuit in Janney, when you have two obligors under the exact same contract, the exact same one, this court in Janney said that second obligor is not an indispensable party. So you could have two signatories to the exact same contract. You sue one under the theory of joint and several liabilities. The second one is not indispensable. It occurred to me that if the absent defendant was really concerned about it, I suppose that that person might make a motion for leave to intervene unless it destroyed diversity. Well, it wouldn't if they sought to intervene under Rule 24. And in fact, again, that's what the Janney court, this court said in that they have the rights exist under Rule 14 or under Rule 24. And it's in that context that the rights of the absent insurers could be protected. And there are many who knew about it. In fact, in this case, there was an absent insurer. There was an absent insurer that was originally a party to the case dismissed because it was non-inverse. It had no problem being dismissed from this case. It has not sought in any way to intervene. Janney was a little different because that case involved an absent party who was a co-obligor, which is quite different from this case. You know, I would suggest that it's even stronger here. There is no co-obligors. In the example Judge Riener gave, it was A and B and B somehow had some relationship, but see, there is no relationship whatsoever amongst any of these insurance company defendants. The only relationship is like spokes of a wheel. They all have insurance with General Refractories. That's who they wrote the policy with. So there is no intertwining between these companies. Janney is a much stronger situation because in that case, you have two obligors under the exact same contract. There is no relationship whatsoever between the insurance contracts that exist here, except in one circumstance, there is an incorporation of some language from one policy into the other one. But that was specifically dealt with in Janney because you have exact same language. What happens if we were to agree with you and conclude that the district court was wrong about the necessity of having the absent parties in this case? You would then reach the merits of your declaratory judgment action. Let's say you get a ruling in your favor. Is that the end of your case in federal court? If we got a ruling in our favor that there was asbestos coverage in each of these policies, and maybe in some we do and some we don't, then there would be a tender of cases to the ones that we do, and there may be defenses by the insurance companies as to whether or not there has been exhaustion or other things. I understand, but it's just a declaratory judgment action. In other words, you anticipate going back to state court? No, your honor. I don't think we would need to go back. I would anticipate that if we get the declaration that they cover asbestos, as soon as they're satisfied that there's been appropriate exhaustion, they would then cover the cases. If they deny the coverage, then we would be back in court, whether it be federal or state court. So they could, in theory at least, be in a position where if they were obligated to cover you because of the provision incorporating a provision in the policy between the insurance company and the excess insurer, knowing the excess insurer disagrees with the result of this case, they might be in a position where the excess insurer would say, well, we're not going to contribute. Your honor, if they deny coverage that's otherwise available, I'm not in a position to stop that. There may be another lawsuit, but the primary issue is now whether or not these insurance companies provide coverage for asbestos claims. You know what I couldn't help but wonder in this case? I'm going to introduce a concept that a lot of people don't know about, but it exists. The concept is called vouching in. And the common law permitted a defendant who was sued to vouch in a third party. And by vouching in, you don't make him a third party defendant. You vouch him in by saying, hey, you may be liable to me if I'm liable to the plaintiff, and I'm tendering the defense to you. And then when you vouch him in, if he says, well, I'm not doing anything, even though you've tendered the defense to me, then the vouchee, I guess you'd call it, as I recall it, frankly, I didn't even think of this until I was sitting here. And I often wonder why people don't vouch in more. Because according to the Supreme Court of New Jersey, it existed outside the rules. I remember the case now, that common law. And I often wonder why people don't vouch in more. If I'm right, and that's the law, can't they vouch them in? I think they can do that. I think they can bring them in under a common law, under typical Rule 14, either if they're a defendant, as many did cross claims, or bring in the parties on a contribution claim. They can do all of that. That wouldn't destroy diversity. No, they're not a party if you vouch them in. They don't become a party, as I recall it. What they do is they defend you. I think in this case, they would obviously defend themselves, saying that they don't provide coverage. I mean, many of these other policies would just say we don't provide coverage. I think this circuit in Copper is really very clear that the issue of allocation amongst insurance companies is a later issue. And that is a separate lawsuit, and that does come later. We said in that first Copper case, Volume 98, that we predicted that in the context of joint and several liability, the Pennsylvania Supreme Court would adopt an apportioned share set-off rule. What did they do? That was 10, 11 years ago we decided that case. Anything happen in the Pennsylvania Supreme Court in that? Not that I'm aware of, except that J.H. France holds that the insured is allowed to pick and choose whatever insurance company it wants. J.H. France is decided by the Pennsylvania Supreme Court and has made it clear that from the insurance point of view, it can pick any company it wants. It gets full coverage, no gaps in coverage, and that's it. Now whether the insurance companies have some rights under their language or their policies to then separately bring an action under other insurance provisions or otherwise is a separate issue. But there's no prejudice to them in this case by deciding that they have coverage. That's J.H. France. That's the Supreme Court of Pennsylvania. The result of upholding the district court is that in every single insurance company, if J.H. France had brought one defendant, just one, declaratory judgment against one of them, you'd still have to say that one defendant could say, I want to bring all other 20 in, that there might be some claim by me over against them. Or all other 20 arguably could say, whether or not you win in that case and get coverage could affect us. We want you to have coverage. We have an interest. We are indispensable. So the theory of the district court, as far as its broad holding about all of them being indispensable, would be applicable to one company. It would also be applicable if one insurance company brought the same action against General Refractory seeking a declaration. It didn't provide coverage, which is often the case. So the ramifications of upholding the district court is somewhat draconian in the context of insurance law. In order to issue a judgment that satisfies all of the parties, doesn't the district court have to get into the contracts and into linking of the various insurance contracts involved here, whether or not there's liability on the part of the absent defendant? I don't believe so, Your Honor. I think it has to make one decision. No, but it has to make one decision that's satisfactory to all the parties involved and to address the remedies that are sought. It has to make one common decision with respect to the issue of the Pennsylvania Department of Insurance. It will have to make separate decisions with respect to each individual policy as to whether or not the exclusionary language is otherwise broad enough to cover all these cases. That's the only decision it has to make. It has to make no decisions with respect to exhaustion. It has to make no decisions with respect to other insurance provisions or any other language in the policy. And even if it did, and even if it had to make a decision based upon language in another policy, that still doesn't make that other policy indispensable. I would cite the court to the UTI case, which is directly on point, and again follow Janney. And Janney says that the issue of persuasive precedent is not applicable in the Third Circuit. So unless those absent parties have a legally protected right, not a financial interest, but a legally protected right, in this case, they're not indispensable. Thank you, Mr. Kessler. We'll have to give a little time to Mr. Neri's time if he needs it. Mr. Conley? Good afternoon. Michael Conley from Anderson-Kelvin Allick. I'm here today on behalf of the Amicus United Policyholders. United Policyholders is a non-for-profit corporation. Its goal is to educate the public on insurance issues. We contribute on an ongoing basis to public forums on insurance coverage on behalf of policyholders. We regularly submit Amicus briefs to various courts. We've been cited by the U.S. Supreme Court and various other courts. Why was the district court's decision a bad decision? Here's the fundamental problem from a policyholder standpoint from this decision. I think you have to start with the idea that Pennsylvania is a pick-and-choose state. Under J.H. France, a policyholder can pick and choose the coverage that it wants. In these types of cases, asbestos cases, environmental cases, J.H. France was an asbestos coverage case. Typically what happens is there's a block of coverage that's available. The claims span the block of coverage, and so there are multiple years with multiple policies that are triggered. It's often the case that the policyholder doesn't need all that coverage. Maybe there's only five claims asserted at that time, and maybe they think a million dollars of coverage is sufficient. So they will trigger one of the policies. J.H. France allows them to do that. There's a cost associated with adding insurance companies. The more insurance companies you add, the higher the cost is for the policyholder. Under the district court's decision, take for instance an asbestos liability where there's a ten-year block of coverage. The policyholder would have to sue every single insurer in that block of coverage, even though it could have no expectation of needing all of that coverage. That's inconsistent with J.H. France. J.H. France says you can pick the policy you want, exhaust that policy, and then pick another policy and exhaust that policy. Well, if I pick one policy and there's other policies that cover the same risk that I have to pay for, then I suppose I can join in the other companies, even though the plaintiff didn't. As the insurance company? Yes. Yes. That's their option. I think what's interesting here is you only had five of 16 defendants join in this motion. From a judicial standpoint, though, Mr. Manieri, it doesn't sound terribly efficient to allow a plaintiff to go after one policy after another policy. These policies are all sums policies. It's joint and several liability. You're allowed to go after one policy and exhaust it pursuant to J.H. France and what this court adopted in Congress. Efficiency is one thing, but there's a cost. I mean, imagine the cost to a policyholder to sue 20 insurance companies when it doesn't need those 20 policies. The other point is real quickly in terms of the policy language issue. The objecting defendants here say that the court would be asked to interpret another insurance company's language. That's not really accurate. What happens in these access and umbrella policies is those insurance companies choose to use form language by another insurance company and incorporate it into theirs. So what you're really interpreting are the defendants' insurance policies. They just borrowed that language from another policy. Are these manuscript policies? I know where sometimes really major corporations get policies that are actually written specifically for the particular risk. They're like a contract. They're not like, well, I get insurance policies. Believe me, nobody asks what I want. Although I can ask for options. I think what you're getting at is insurance policies largely have to be submitted and in many cases approved by insurance regulators. Because of that, there's companies such as the Insurance Services Office, ISO, who develop form language. They go to the various states, submit the policy for approval, and then a number of insurance companies use that policy. Imagine the instance here where there's standard language that is an issue and a dispute. Under the trial court's decision, would the trial court require every insurer that used that standard language to be joined? Because of the idea that there could be a persuasive precedent? Insurance companies use standard language. They incorporate it into their policy. The fact that one court makes a finding as to that standard language, it's binding on that court, but it doesn't affect the other courts. I've seen what happens in those situations is the decision comes down and some company that's not a party asks the insurance office to modify the language. They don't think it's a good result. That's certainly an option, but look what happened, for instance, with the sudden and accidental pollution exclusion. That's standard language that's been adopted by the insurance industry, but you've had a variety of results throughout the United States in terms of interpreting that language. Does the follows-the-form provision determine the extent of the liability of the defendants who are parties in the case? It determines it in the extent that it's contract language incorporated into their policy. What these policies are is instead of having a 20-page policy, the excess policy will just be one or two pages. It'll have a declaration page with the limits, the cost of it, those types of things. Then it'll just say, instead of adding the policy language, it'll say, we're going to use the same policy as the primary or the policy underneath it. They're just borrowing language, which is what the insurance company does all the time. It's their use of standard language. It's also because of the use of standard language why Pennsylvania has rules in short specific to insurance policy interpretation. For insurance policy interpretation, if the phrase is ambiguous, it's interpreted against the insurance company. Does the joint and several liability have an effect on the follows-the-form issue? Well, the joint and several liability is at the heart of the ability to name individual insurance companies. In other words, it doesn't really matter to the plaintiff what the follows-the-form language says or who is responsible with regard to the absent parties. These are the parties that I want to be responsible for my risk. Absolutely. There's a lot of different reasons they could do that. There are deductible issues. There are reserve issues. There are limits issues. The policyholder has a choice of going after one insurance company, for instance, with a $10 million limit or going after 15 or 10 with $1 million each of limits. They're going to go after the $10 million limits just for economies. What the trial court would require you to do is name all of them. And I think the fact that that outcome is something that the insurance industry, as evidenced by the fact, again, only five of 16 insurance companies joined in this motion. There's no amicus submission by anyone from the insurance industry. And none of the absent insurers have sought to intervene. Okay. Mr. Connolly, thank you very much. Thank you. Mr. Maneri, we'll have to add a little time to Mr. Maneri. How about five minutes for Mr. Maneri's time if you need it? Thank you, Your Honors. Mr. Gorfinkel has advised me that he's waiting his one minute. Okay. Very good. Good afternoon, Your Honors. Frank Maneri of Dilworth Paxson. I represent Westport Insurance Company, and I'm arguing on behalf of the respondent insurers. There's a lot of ground to cover. I'll start with the last point made by Mr. Connolly about the alignment or that you could – the idea that you could bring in the absent insurers on a third-party claim doesn't work. And the reason why it doesn't work is because of the alignment requirement that the court has to go through. And this court, in fact, did it in the Angst decision 11 years ago. It's a principal purpose test, and that test is to determine what the principal purpose of the suit is. And regardless of how the parties have aligned themselves in the way they've filed pleadings, where do they sit in adversity to each other, or how do they sit? In this case, because it was a liability question, fundamental liability question that Your Honor initially asked Mr. Katz, if we were the third party and the absent insurers being Granite State, and if this case gets remanded one beacon at the minimum, they are adverse to GRC, and they would be joint with the current defendants. Why? Because we will be arguing that the asbestos exclusion is valid. Exactly what they'll be arguing. So the third-party claim doesn't work. The impleeder doesn't work. You have to realign, and the court has an obligation to do that. And the realignment would destroy diversity. Could the court address the asbestos exclusion provision first? I mean, if it determines that it's not valid. Now, wouldn't that affect third-party claims? The reason why there's a problem with doing that, your question is if it determined it to be invalid? That's right. The reason why there's a problem with doing that is that the existing defendants could be what other courts have called whipsawed in the second action. So let me explain that. If you don't have the other absent defendants in the case, they're not bound by any decision of the district court. If the exclusion is held to be invalid, and then because of our other insurance clauses and because of our rights to allocation among other insurers who haven't paid their limits, what GRC is arguing is that we would have the obligation to go and pursue those defendants. In that action, those defendants wouldn't be bound by a decision that the clause is invalid. And then in the second action, another court, different evidence, different ruling could argue, could rule that the clause is valid, and we couldn't get our other insurance clauses would be mooted, and we wouldn't be able to probate the loss that way. I know this is an unfair question because it wasn't raised until this argument. But what's to stop you, assuming that I know what I'm talking about, and in vouching in existing common law, what's to stop you in vouching them in and tendering the defense on that issue to them? And then if they don't take it, they're going to be bound. If they don't undertake to defend it, they'll be bound by the result, or they can undertake to defend it. I mean, you can, assuming that vouching in exists, and I think it does because it exists in common law, you can avoid the problem. I agree with you, Your Honor, that it's an unfair question, but I'll try to answer it. I'm not aware of the vouching in common law. I can't understand why it's not done more. It's about 40 years ago, I'm telling you. You'll find it. My guess is that the rules perhaps have superseded that particular common law principle. No, because when the Supreme Court of New Jersey, look, I haven't read it in 40 years. Well, I remember when the Supreme Court of New Jersey ruled on it, they said the rules did not supersede it. Okay. It's just alongside it. The one point to make, though, was the fact that Grand State wasn't the case. On an allegation that they were diverse, it turned out that they were diverse, but not diverse. They had to be dismissed by the plaintiff. That's why this whole issue came about. We had a Rule 16 conference and found out that Grand State was not diverse. They had to be dismissed. We raised the Rule 19 issue. Now, the question is, when Grand State was dismissed, did the plaintiff ask them, well, we're dismissing you, but will you agree to be bound by the decision? I don't think that happened, and I don't think Grand State or any other party should have to be put in a position to be bound to a decision that they're not participating in, where they can't conduct discovery, where they can't go to depositions, where they can't participate in trial. Let me address some of the other arguments. You've distinguished this particular case with Janney. It seems like Janney cuts directly against you. I think Janney is a completely different case. And I think Your Honor pointed that out in the questioning earlier. Janney is a situation where you have a subsidiary and a parent signing off to a single contract. By definition, they are both 100% liable if liability is found. Okay? It's a single contract. We don't have that here. It was a co-op-la-gore situation. In the Copper's decision, the court predicted that J.H. France, because of what Copper's called complicating factors, being that you had excess insurers in that case, and some of which had settled with the insurer, that they predicted the Supreme Court would apply the apportion-share-settle-off rule. There are certainly factual differences, but the essence of the decision is that the co-op-la-gore simply was not a necessary party, and the plaintiff could pick and choose a plaintiff. That's because they're parties to a single contract, and they're both 100% liable for the same debt. That's not the case in an insurance context where you have primary coverage, umbrella coverage, and then excess coverage. And as Your Honor indicated before, there's interlinking clauses by virtue of the other insurance clauses. That's true, but doesn't joint and several liability, which is the law in Pennsylvania, affect that analysis? That's true, but J.H. France was a primary insurance case. Let me back up. The argument from the plaintiff's side is that J.H. France says, joint and several liability, we can pick and choose any carrier that we want. That's an overstatement of what J.H. France says, and what J.H. France stands for. J.H. France was a decision only involving primary insurance carriers, and loss was decided in the case. In other words, it was a deterrent loss, and the court said to the insured in that case, you can pick any one of the primary insurers. Why? Because the primary insurer is on the hook for dollar one. That makes a lot of sense. That's not the case when you have excess insurers. In the first Copper's decision, this court recognized that distinction, and described it as, quote-unquote, complicating factors being you have excess insurers, and you had some settlements with primaries and some with excess, and they modified the J.H. France rules. It's expressly in the opinion, and they said, we're going to adopt J.H. France, joint and several liability, but we predict that the Pennsylvania Supreme Court would apply the proportion share set-off rule, and modify the ruling, and so they modified J.H. France. One further question, what is really the prejudice that you would suffer by having to litigate this in federal court? Well, the prejudice is because of the inconsistent determinations, and the fact that you don't have other insurers in the case who you can... Where is the inconsistent determination? Well, it can go two different ways. It was the example earlier. If in this case, if we don't bring in the absent insurers who destroyed diversity, granted state, and one beacon, if there's a decision that the asbestos exclusion, which is the primary issue in the case, it's a liability issue, not an apportionment issue. If the clause is held to be invalid, and then we have to go and seek apportionment against absent insurers, who are in the case in second action... In state court? In state court, or wherever it is. Isn't that exactly what Janie said? It's so speculative that maybe we shouldn't worry about it? I don't recall that part of Janie, Your Honor, but I think Janie is distinguishable from this case, because of the fact that it was two parties to a single contract. I think it's a different animal, and you can't take a bear holding from Janie and apply it in the insurance context. Are we essentially saying that we're speculating that the state court might rule differently as to the asbestos exclusion clause? There's no question that when you get into another action, different evidence may be admitted, there may be different evidentiary rulings, there may be different arguments, and then what can happen is there's prejudice because of the inconsistent determinations and the multiple rounds of litigation that you're going to have what I call kind of a chasing tail type of a syndrome, because in the second action, we would sue the absent insurer saying the clause was held to be invalid and we have to pay a share, but you have to pay a share also. That insurer isn't bound by the decision and might bring the plaintiff back into the action, because that insurer's contract is with the plaintiff, not with us. So then you're going to go round and round and round. You have a problem here, I thought, because you have a situation where there's federal jurisdiction. If there's complete diversity between the existing parties, when I say between them, I'm saying between two parties, plaintiff and defendants, and the amount of controversy obviously is well over the 75,000 threshold, and you're using the federal rules of civil procedure to stop a federal court from exercising jurisdiction the statute grants it, and the Supreme Court, for example, has said in abstention cases, where it looks like there's a good reason not to hear it, that usually the federal courts have an unflagging obligation, that's the word of the Supreme Court, to exercise the jurisdiction that they have. Now, sometimes abstention is permitted, but you've got to be pretty careful, because you're using a rule to oust the court of jurisdiction. In the jurisdiction, no one's saying that among the parties that were there right now, there isn't federal jurisdiction. There is. That is correct, Your Honor, but the initial complaint named one defendant that had to be dismissed, and there's also another defendant that's going to have to be dismissed. Because of an absence of diversity? That's correct, and there is law on equipment, the U.S. Supreme Court says that it's a fundamental precept that federal courts are courts of limited jurisdiction, and there is a presumption against subject matter jurisdiction in federal court. But it will exist, though, if there is complete diversity, certainly the amount of controversy. That's right, subject to Rule 19, which brings the whole issue of the joinder. If there's necessary and indispensable parties, and that necessary and indispensable party is not diverse, then it destroys diversity, and the case can't go forward. I understand that, but shouldn't there be a certain, I don't want to say timidness on the part of the court to say that, but a certain reluctance to want to destroy federal jurisdiction? Actually, I think it should be the other way, Your Honor, and I think the courts recognize that there's a presumption against jurisdiction. Let me address a couple things on bail. The plaintiffs are arguing bail prohibits us or makes it difficult for us to go into state court. First of all, there's been nothing in the record to establish how many claimants have been filed. Secondly, J.H. France in another decision said that only the claimants who have pending claims against the insured have to be named, not settled, and not future. Thirdly, you heard from Mr. Katz that they've been sued in 30 jurisdictions. There's nothing to stop GRC from going across the river into Camden and filing a declaratory judgment action, and it doesn't have the bail doctrine, and it doesn't have a diversity issue, or any other jurisdiction where it's been sued. So there's an available state remedy, which is a dispositive factor under Rule 19B, which this court recognized in the Angst decision, which I referred to earlier. The other point I'd like to make is in the Bank of America decision, Judge Becker had a situation, it was cited by the other side in support of its brief, and it actually supports our position, because what Judge Becker said in that decision is that there was a threshold liability issue. Well, let me back up. There was an initial lawsuit against a bank by a concrete contractor. The bank didn't sue the developer, Hotel Rittenhouse. The bank filed a motion saying the developer was an indispensable party. The motion wasn't ruled on, the case was stayed, it went into arbitration. An arbitration award was entered against both the bank and the developer, because both parties were in the arbitration. Okay, now they're all present. The contractor goes back into court to enforce the arbitration award, but doesn't bring in the developer. The bank removes its motion for indispensability, and the court, Judge Becker says, we note that the equities of the case and the situation of the parties have changed dramatically since the original Rule 19 motion was made. When that motion was first made, the question of liability was still at issue. Now, after the arbitration, the only issue left is enforcement of the award. We agree with the contractor that the district court mistakenly decided the 19B question as if it were faced with an initial dispute on the merits. In this case, the district court is faced with an initial dispute on the merits. The liability issue has not been decided, and that's what Judge Becker, that was the underpinning of his decision. And he also said, because liability has already been determined, there is no argument that suing only one of the jointly and separately liable parties will prove a fruitless endeavor. In this case, it will be, because you're going to have inconsistent, you have the exposure to inconsistent determination, multiple rounds of litigation, and that's exactly what Rule 19 is designed to prevent. The court should be mindful of the fact that you're going to have possibly a second or third piece of litigation. It's a mere possibility of a different decision enough to require jointed parties. I think so, Your Honor. Just because it's possible that the state court might have a judgment different from the federal court, you have to have jointed parties. I thought that Jamie said something quite different. I'm not sure. I'll let Mr. Katz respond to that. One Beacon and Granite State have $55 million in insurance limits out there, so there's going to be a second suit if they're not joined in this case. I couldn't help thinking about what he had said. If we do require him to go into state court, he has to literally bring in thousands of plaintiffs. Could you comment on that? Not in New Jersey, he wouldn't have to do that. The plaintiff is being sued in 30 jurisdictions. That means that they have entered into those jurisdictions, and those plaintiffs have jurisdiction over them. So the plaintiff can just go into another jurisdiction across the river. It's a 15-minute drive. File a suit in Camden, in a Superior Court, in a D.J. action. There's no similar New Jersey rule on joining the claimants in the underlying action. It's a simple available remedy that Rule 19b speaks to. The other point about Jay Trant's rights being misstated in this case, Jay Trant's language in here that talks about that rejects the lower courts, the way they did the allocation, and it's stated about the pick-and-choose approach, and it's stated, the conclusion does not alter the rules of contribution or the provisions of other insurance clauses in any applicable policies. There is no bar against an insurer obtaining a share of identification or defense costs from other insurers under other insurance clauses or under the equitable doctrine of contribution. In this case, there would be a bar. Why? Because you have a liability issue that hasn't been decided in the underlying action. The district court made specific findings as to one absent defendant, and it seemed like on the basis of that, it determined that Joinder was required of all defendants. Is that correct? I saw the opinion as using that as an example and not using that as the sole basis of its opinion. That's the way you looked at it. Excuse me? The way you looked at it is that this... Yeah, if you read the opinion, well, I mean, I know you've read the opinion, but I can point to parts of the opinion, Your Honor, that say that the respondents have argued that any one of the absent insurers would be indispensable. I think he was just using that as an example. He wasn't using that as a sole basis. What we do know, regardless of sensory indemnity, which has been represented to be settled, what we do know is Granite State was a named defendant, was dismissed. There's no settlement there. And if you look at the appendix at 436 of the appendix, there's an argument made that, you know, they can pick and choose and they can go to any insurer. But you can't skip over insurers, which is what they're doing here. Because Granite State, which is a dismissed defendant now, has a $5 million policy in 84-85 and a $25 million policy in 80-81. The $5 million policy in 84-85 sits below 1, 2, 3, 4, 5 carriers in this case. Those 5 carriers have other insurance clauses in their policies and 1, 2, 3 of them expressly follow form to Granite State's provisions. Okay, Mr. McNary, I think you're over your time, and that includes the additional time. Thank you very much. Mr. Katz. Thank you, Your Honors. With respect to Mr. McNary's reference to Granite State, I would direct the panel to the coverage chart 653A, the Granite State policy there, the fourth one in column C, where they assert the basis for indispensability. There is none at all. With respect to the second Granite State policy, there are several policies that are listed there as the basis for indispensability. Not one is a moving party in this case. Not one has claimed that Granite State is indispensable. So none of the moving defendants are in any way asserting indispensability as to Granite State. I would like to go back to Janney. Janney is different. It's stronger. It's much stronger. I mean, Janney, you have co-obligors under the same contract. Mr. McNary's wrong when he says if you have co-obligors under the same contract, then you sue one, the other one's bound by the decision. The other one's not bound. If the defendant brings in the co-obligor, they could be bound. But otherwise, that co-obligor is neither bound by collateral estoppel or res judicata. What he could be bound by is persuasive precedent. I didn't understand your comment that Janney is stronger. Aren't you pretending that your case is strong? What I'm saying is from an indispensability point of view. Janney's a better argued case. There's more to supporting dispensability here than here. Absolutely, Your Honor. Absolutely, because you have the same contract. You have two obligors under the same contract. The plaintiff decides to sue one of them. The other obligor is left out. And the defendant says that the other obligor is indispensable. And the Janney court said it is not. It said that even in the same exact contract, and that other obligor, contrary, I'm not aware of any law that would bind that absent co-obligor. In this case, you're talking about different contracts. You're just talking about basically contribution indemnity rights. Was the basis of that decision joint and several liability? Yes, Your Honor. Absolutely. It was joint and several liability. And the court said just because you can be liable for 100%, that doesn't mean it is inconsistent. That brings an inconsistency or anything else. Is that what you've got here, the policies that you've implicated in your lawsuit are 100% liable for your coverage? Each one. Each one is 100% liable. And we could sue one, we could sue all of them. Your Honor, generally speaking. You're basically saying the follow-through language is of no concern to you. It's of no concern to General Infractory as it may be a concern to the insurance company defendant if they litigate that language in another case with that insurance company. But the persuasive precedent is not applicable in the Third Circuit. And so if they're concerned about inconsistent decisions, they can bring that third party in. I'd just like to quote for a second from Janney because it's right on point. To answer Your Honor's questions. First of all, Janney says, mere presentation of an argument that issue preclusion is possible is not enough to trigger Rule 1982. Rather, it must be shown that some outcome of the federal case that is reasonably likely can preclude the absent party. Again, the absent party. With respect to an issue material for the absent party's rights or duties, under standard principles governing the effect of prior judgments, there will be no decision made in this district court that will in any way preclude any absent party. Janney went on to state... You're going to have to shut Mr. Couch down. Your Honor, I would just point again that in Janney, they talked about contribution and indemnity. They specifically said that those rights do not make anybody indispensable. And that's the law in this circuit. Whether it's Janney, whether it's Bank of America Trust, whether it's Coppers, whether it's J.H. Frank, it's all of those hold that it's up to Jerry Factories to sue those carriers that it wants. And then those carriers will have a separate course of action against the other ones. Thank you, Mr. Katz. Thank you very much. Mr. Connolly, thank you. Mr. O'Leary, the case was very well argued. We'll take the case under advisement.  Thank you, Your Honor. Thank you.